IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LEONARD EVANT MONTGOMERY, | * | |
| Petitioner, | * | Civil Action No. RDB-12-2070 |
| v. | * | Criminal Action No. RDB-10-0475 |
| UNITED STATES OF AMERICA, | * | |
| Respondent. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

The *pro se* petitioner Leonard Evant Montgomery ("Petitioner") has filed a Motion to Vacate, Set Aside, or Correct Sentence (ECF No. 107), pursuant to 28 U.S.C. § 2255. Petitioner argues that this Court improperly found him to be a career offender under the Federal Sentencing Guidelines, and due to this finding, he received a higher sentence than would have otherwise been imposed. Petitioner further claims that he received ineffective assistance of counsel due to his attorney's failure to object to his career offender status. Because this Court properly calculated Petitioner's sentence, Petitioner's Motion to Vacate (ECF No. 107) is DENIED.

BACKGROUND

**A. Petitioner's 2011 Sentence for Conspiracy to Distribute and Possess with Intent to Distribute.**

On July 19, 2010, Drug Enforcement Administration ("DEA") agents observed two individuals named James Knowlton ("Knowlton") and Lucy Cabrera ("Cabrera") arrive at the Baltimore-Washington International Airport from San Diego, California. Plea Agreement at 8, ECF No. 83. Both individuals then checked into a room at a Motel 6 in Linthicum Heights, Maryland. *Id.* The agents continued to monitor the motel room, and the following day they

1

observed a third individual, later identified as Petitioner, meeting with Knowlton inside the room. *Id.* After a brief meeting, Petitioner emerged from the room holding a black object. *Id.* The agents followed Petitioner's vehicle and conducted a stop for an unrelated traffic violation. *Id.* During this stop, a trained canine alerted the agents to the presence of narcotics inside Petitioner's vehicle. *Id.* The agents recovered black tar heroin, in excess of 200 grams, from the vehicle and arrested Petitioner. *Id.* Knowlton and Cabrera were arrested following Petitioner's detainment. *Id.*

On August 5, 2010, Petitioner was charged with one count of conspiracy to distribute and possess with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. § 846, and one count of possession with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. § 841(a)(1). Indictment, ECF No. 25. On October 21, 2010, Petitioner pled guilty to the conspiracy charge pursuant to a plea agreement.

On August 24, 2011, this Court sentenced Petitioner to a prison term of ninety-six months with a four-year period of supervised release. *See* Petr.'s Mot. to Vacate at 1, ECF No. 107. During Petitioner's sentencing, this Court determined that Petitioner was a career offender as defined by the Federal Sentencing Guidelines under Section 4B1.1.[1] *Id.* at 9. In making this calculation, this Court deemed that Petitioner's prior escape conviction constituted a crime of violence that counted toward Petitioner's career offender status. Ultimately, this finding qualified Petitioner for a Guideline range of 100 to 125 months of incarceration, as opposed to a forty-six to fifty-seven month range. *See* Gov.'s Resp. at 3, ECF No. 110. After determining that Petitioner was a career offender, this Court sentenced Petitioner to a period of incarceration

---

[1] Under Section 4B1.1 of the Federal Sentencing Guidelines, a defendant is considered a career offender if he is convicted of a serious drug offense or a crime of violence and has two prior such convictions on his record. U.S.S.G. § 4B1.1.

that was four months below the minimum recommended sentence under the Federal Sentencing Guidelines. *Id.*

On July 11, 2012, Petitioner filed the pending Motion to Vacate under 28 U.S.C. § 2255 (ECF No. 107). In his Motion, Petitioner asserts that this Court improperly considered the escape conviction when determining that Petitioner qualified as a career offender under the Federal Sentencing Guidelines. *See* Petr.'s Mot. 9. Petitioner also claims that his counsel acted ineffectively because counsel failed to object to the characterization of his escape conviction as a crime of violence. *See id.* On September 28, 2012, the Government filed its Response to Petitioner's Motion to Vacate (ECF No. 110). Petitioner submitted his Reply (ECF No. 115) on October 22, 2012.

**B. Petitioner's 2001 Escape Conviction.**

Because Petitioner challenges whether his escape conviction[2] qualifies as a predicate for career offender status, this Court also includes the following facts related to that conviction. In

---

[2] Petitioner was convicted under Article 27, §Section 139(a). At the time, Article 27, Section 139 (a) of the Annotated Code of Maryland provided:

> (a) If any offender or person legally detained and confined in the penitentiary or jail, or house of correction, or reformatory, or station house, or any other place of confinement, in this State, escapes he shall be guilty of a felony and on conviction by the Criminal Court of Baltimore City or by the circuit court of the county in which the escape takes place, be sentenced to confinement in the penitentiary, jail or house of correction for whatever additional period, not exceeding ten years, as the court may adjudge. The sentence so imposed shall be consecutive to the sentence under which the inmate was originally confined and may not be suspended. However, for escapes from the Maryland Correctional Institution Hagerstown or the Maryland Correctional Training Center Hagerstown or any juvenile institution which have not involved an assault, the sentence may not exceed confinement for three years.

On October 1, 2002, Article 27, Section 139 of the Maryland Code was repealed and replaced by Maryland Code, Criminal Law, Sections 9-404 and 9-405. These statutes separate the crime of escape into two degrees. Section 9-404, which defines first degree escape, provides that "a person may not knowingly escape from a place of confinement." MD Code, Criminal Law, § 9-404(a). Under 9-405, a person commits second degree escape if that person departs custody after a lawful arrest, fails to obey a court order to report to a place of confinement, or escapes from home detention or juvenile detention centers. MD Code, Criminal Law, § 9-405(a).

September 1997, Petitioner started serving a ten-year prison sentence for distribution of controlled substances. Ct. Tr., Feb. 2, 2001 at 7, ECF No. 110-2. He was housed at the Herman Tolson Boot Camp, which offers prisoners the opportunity to study at a local community college. *Id.* Petitioner enrolled in a fiber optics course. *Id.*

On October 13, 2000, Petitioner escaped during the middle of a class session. Ct. Tr., Feb. 2, 2001 at 7, ECF No. 110-2. Law enforcement officers located Petitioner running across East Furnace Branch Road in Glen Burnie, MD. *Id.* A law enforcement officer ordered Petitioner to stop; however, Petitioner continued to flee on foot. *Id.* at 7-8. Additional police officers arrived on the scene to set up a perimeter. *Id.* at 8. Law enforcement officers also utilized air support and canine units. *Id.* After locating Petitioner within the vicinity, law enforcement officers ordered Petitioner to stop running, but Petitioner hid underneath a bush. *Id.* Petitioner refused to emerge from the underneath the bush. *Id.* At this time, law enforcement officers released canine units to subdue and apprehend the Petitioner. *Id.* On February 2, 2001, Petitioner entered a guilty plea for escape under Article 27, Section 139(a) of the Maryland Code. *Id.* at 3-7.

## ANALYSIS

**I. Petitioner's Escape Conviction as a Predicate Felony Under Section 4B1.1 of the Federal Sentencing Guidelines.**

Petitioner argues that he does not qualify as a career offender under Section 4B1.1 of the Federal Sentencing Guidelines and that he received a higher sentence because of his improper career offender status. Under Section 4B1.1, a defendant is considered a career offender if he is

---

At Petitioner's arraignment, counsel for the state referred to the charge as a first degree escape at the arraignment, but the trial court entered a conviction for Petitioner under Art. 27, § 139.

4

convicted of a serious drug offense or a crime of violence and has two prior such convictions on his record. U.S.S.G. § 4B1.1. A crime of violence includes "any offense under federal or state law, punishable by imprisonment for a term exceeding one year" that "has as an element the use, attempted use, or threatened use of physical force against the person of another or is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a).

Petitioner pled guilty to a serious drug offense—the heroin conspiracy charge—and does not dispute a previous narcotics conviction in a Maryland state court[3]. *See* Petr.'s Rep. at 1. Petitioner challenges only this Court's use of his conviction for escape as a predicate for Petitioner's career offender status. *See id.* at 2. Specifically, Petitioner asserts that his escape conviction was a nonviolent offense because he absconded while attending classes at a local community college and that, as such, it does not constitute a crime of violence as defined by Section 4B1.2(a) of the Federal Sentencing Guidelines. *See id.* at 3. Contrary to Petitioner's argument, the Government states that the escape conviction is a crime of violence because Petitioner actively fled from law enforcement officers who attempted to detain him, which resulted in a police chase and presented a "serious risk of physical injury to another." Gov.'s Resp. 5 (quoting U.S.S.G. § 4B1.2(a)(2)).

**A. The Modified Categorical Approach Applies to Petitioner's Case.**

The United States Court of Appeals for the Fourth Circuit faced a similar issue in *United States v. Bethea*, 603 F.3d 254 (4th Cir. 2010). In *Bethea*, the Fourth Circuit had to determine whether a conviction under South Carolina's escape statute qualified as a violent crime predicate

---

[3] Specifically, in September of 1997, Petitioner was lawfully sentenced to serve a ten-year sentence for possession with the intent to distribute controlled substances. Ct. Tr., Feb. 2, 2001 at 9.

under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e).[4] The Fourth Circuit noted that, under the traditional categorical approach as set forth in *Taylor v. United States*, 495 U.S. 575 (1990), a court would normally look to the essential elements of a crime when determining if it was a violent crime predicate. *Id.* at 256. However, because South Carolina's escape statute "broadly criminalize[d] conduct that could be generally committed in multiple ways, some violent and some not," the Fourth Circuit applied the modified categorical approach to determine whether the defendant's conduct constituted a violent felony within the purview of the ACCA.[5] *Id.* at 256. In applying the modified categorical approach, a court must review the particular facts of the offense to determine whether the nature of the crime was that of a violent felony. *See id.* (citing *Shepard v. United States*, 544 U.S. 13, 20 (2005); *Taylor,* 495 U.S. at 602). When analyzing these facts, a court is "limited to the terms of the charging document, the terms of a plea agreement . . . or to some comparable judicial record of this information." *Shepard*, 544 U.S. at 26.

Guided by the Fourth Circuit's decision in *Bethea*, this Court finds that the modified categorical approach is required in analyzing Petitioner's escape conviction. Section 139 of Article 27 of the Annotated Code of Maryland defines escape as occurring when "any individual who is legally detained in the State Penitentiary or a jail, house of correction, reformatory, station house or other place of confinement in this state . . . escapes." The essential elements of

---

[4] The ACCA mandates a fifteen-year minimum prison sentence for anyone "who violates section 922(g) of [Title 18] and has three previous convictions by any court referenced in 922(g)(1) of [Title 18] for a violent felony or serious drug offense, or both . . . ." 18 U.S.C. § 924(e). The definition of a "violent felony" for ACCA predicate purposes is precisely the same as a "crime of violence" under U.S.S.G. § 4B1.2(a)(2).
[5] Although the U.S. Supreme Court articulates two separate approaches for determining when a conviction qualifies as a predicate crime, both approaches analyze whether the offense increased the risk of injury. *Compare Sykes v. United States*, 131 S. Ct. 2267, 2275 (2011) (applying the traditional categorical approach to conclude that "the Indiana Code §35-44-3-3 punishes conduct that produces a serious risk of injury) *with Chambers v. U.S.*, 555 U.S. 122, 127 (2009) (applying the modified categorical approach to conclude that "[t]he behavior that likely underlies a failure to report would seem less likely to involve a risk of physical harm than the less passive, more aggressive behavior underlying an escape from custody"). The analysis differs between these two approaches only in the way that the Court examines the previous conviction, i.e., the categorical approach analyzes the criminal statute, while the modified categorical approach analyzes the criminal defendant's conduct.

the Maryland escape statute under which Petitioner was convicted do not demonstrate that escape is purely a crime of violence because a defendant may be convicted if he or she escapes from custody without partaking in any violent activity or causing a serious risk of physical injury to another. Furthermore, the Maryland Court of Special Appeals has held that Section 139 encompassed both "escape without force" and "escape with force." *See Fabian v. State*, 239 A.2d 100, 106 (Md. Ct. Spec. App. 1968) ("Thus we feel that 'escape' as used in Art. 27, § 139 encompasses departure from lawful custody by the use of force or without the use of force as known in the common law, and so includes the common law crime of prison breach."); *accord Watkins v. State*, 400 A.2d 464, 467 (Md. Ct. Spec. App. 1979) ("We find that the statute simplified the common law by consolidating the three types of escape into one statute and making all escape a felony."). Because the Maryland escape statute prohibits both "escape with force" and "escape without force," this Court turns to the modified categorical approach to ascertain whether Petitioner's escape conviction constitutes a crime of violence.[6]

---

[6]This Court notes the recent Fourth Circuit jurisprudence in this area. In August 2012, the Fourth Circuit decided *United States v. Gomez*, 690 F.3d 194 (4th Cir. 2012), which held "that the modified categorical approach applies only to those statutory offenses in which the statute itself is divisible." 690 F.3d at 200. In *Gomez*, the Fourth Circuit reasoned that the statute at issue did not include either facially or judicially determined divisions, and as a result, the traditional categorical approach was appropriate in order to determine whether the statute constituted a crime of violence under § 4B1.1 of the Federal Sentencing Guidelines. *Id.* at 200-02.

The Fourth Circuit based its reasoning in *Gomez* on the concurring opinions in *United States v. Vann*, 660 F.3d 771 (4th Cir. 2011) (en banc). In *Vann*, the Fourth Circuit issued a per curiam opinion holding that the criminal defendant was not convicted of violating a particular subsection of North Carolina's statute prohibiting sexual relations with a minor under the modified categorical approach. *See Vann*, 660 F.3d at 773-74 ("If we assume that we may resort to the modified categorical approach employed by the panel majority, and also assume that doing so would lead to the ineluctable conclusion that subsection (a)(2) offense is a violent felony for ACCA purposes, the government nonetheless cannot prove that Vann was convicted of subsection (a)(2)."). Several judges filed concurring opinions explaining that the modified categorical approach is only appropriate when the statute is divisible. *See id.* at 778 (King, J. concurring) ("Use of the modified categorical approach is only appropriate when the statute of conviction encompasses multiple distinct categories of behavior, and at least one of those categories constitutes an ACCA violent felony."); *id.* at 801 (Keenan, J. concurring) (stating that "[t]he issue [of] whether we may apply the modified categorical approach under the ACCA depends on an examination of the different criminal elements of a statute and on the stated behaviors that these elements proscribe, not on any particular conduct that may be encompassed by a given statutory proscription").

7

**B. Petitioner's Escape Conviction is a Crime of Violence Under the Modified Categorical Approach.**

The facts of Petitioner's case demonstrate that his escape produced a serious risk of injury because it involved purposeful and aggressive conduct similar to the other enumerated offenses in Section 4B1.2(a) of the Federal Sentencing Guidelines. *See Begay v. United States*, 553 U.S. 137, 142-46 (2008) (stating that "burglary, arson, extortion, or crimes involving the use of explosives all typically involve purposeful, 'violent,' and 'aggressive' conduct); *see also Sykes v. United States*, 131 S. Ct. 2267, 2275 (2011) (reasoning that "the purposeful, violent, and aggressive inquiry will be redundant with the inquiry into risk, for crimes that fall within the former formulation and those that present serious potential risks of physical injury to others tend to be one and the same").[7] Similar to burglary, Petitioner's escape produced a serious risk of injury because his flight from law enforcement officers involved aggressive conduct which

---

These cases, however, do not affect the analysis in this case. Petitioner's sentencing occurred on August 24, 2011. Thus, Petitioner's case pre-dates the Fourth Circuit's decision in *Vann* by 48 days, which was not decided until October 11, 2011. Similarly, Petitioner's case pre-dates *Gomez* by 265 days because *Gomez* was not decided until August 10, 2012. Therefore, this Court would have to apply *Gomez* retroactively in order for Petitioner to gain the benefit of the holding in *Gomez* that the modified categorical approach is only to be applied to divisible statutes. Retroactive application of judicial decisions is governed by the standard announced in *Teague v. Lane*, 489 U.S. 288 (1989). In accordance with the *Teague* standard, this Court has already determined that *Gomez* announced a new rule of law. *See Wallace v. United States*, No. RDB-11-1540, 2013WL 500453, at *11 (D. Md. Feb. 8, 2013) (stating that *Gomez* announced a new rule of law that did not apply retroactively under either of the two exceptions to the general rule of non-retroactivity for new substantive rights). Thus, *Gomez* is of no moment in this case.

In addition, this Court further notes that the modified categorical approach would still apply even if *Gomez* applied retroactively. Central to *Gomez*'s reasoning was that the statute was not divisible because it included neither facial nor judicially determined divisions. *See Gomez*, 690 F.3d at 200 ("Further, [the child abuse statute] contains no divisions—either facially or judicially determined—regarding the use of absence of physical force."). However, the Maryland courts have supplied the judicially determined divisions required in order to apply the modified categorical approach. *See Fabian v. State*, 239 A.2d 100, 106 (Md. Ct. Spec. App. 1979) ("Thus we feel that 'escape' as used in Art. 27, § 139 encompasses departure from lawful custody by the use of force or without the use of force as known in the common law, and so includes the common law crime of prison breach."). For this reason, this Court would still need to apply the modified categorical approach to determine whether Petitioner pled guilty to either escape with the use of force or escape without the use of force. In accordance with the Fourth Circuit's holding in *Gomez*, this Court would adjudicate simply whether Petitioner committed the judicially determined crime of escape with force.

[7] In *Sykes*, the Court explained that the *Begay* phrase of "purposeful, violent, and aggressive conduct" indicates the level of risk that a criminal defendant produces. 131 S. Ct. at 2275-76. Therefore, while *Sykes* does not require purposeful, violent, or aggressive conduct, courts still may use evidence of "purposeful, violent, and aggressive conduct" to ascertain the level of risk that the criminal defendant produced.

ended in violent confrontation. *See Sykes*, 131 S. Ct. at 2273 (2011) ("Burglary is dangerous because it can end in confrontation leading to violence."). Law enforcement officers ordered Petitioner to stop running three times. Ct. Tr. Feb. 2, 2001 at 7-8. Petitioner repeatedly disobeyed these requests. *Id.* Petitioner's flight compelled the law enforcement officers to construct a perimeter, request air support, and utilize canine units. *Id.* A canine unit subdued Petitioner only after Petitioner refused to emerge from underneath a bush. *Id.* As a result, Petitioner's flight ended in a dangerous conflict that produced a significant risk of injury to the apprehending law enforcement officers, the canine unit, and the Petitioner. *See Sykes*, 131 S. Ct. at 2274 (reasoning that following a vehicle flight, law enforcement officers may need to approach with guns drawn to effect arrest and the resulting confrontation "places property and persons at serious risk of injury"); *United States v. Doyle*, 678 F.3d 429, 436 (6th Cir. 2012) (reasoning that a criminal defendant produces a significant risk of injury to the pursuing police officers because the "officers must eventually confront those who have already once intentionally disregarded their lawful authority").

Although the Fourth Circuit has held that a criminal defendant's "walk-away escape from an unsecured facility" does not involve conduct that presents a serious potential risk of physical injury, Petitioner's escape is distinguishable because it involved purposeful conduct that escalated the risk of violence to the law enforcement officers, the public, and to Petitioner. *See United States v. Clay*, 627 F.3d 959, 969 (4th Cir. 2010) (holding that a generic crime of walk-away escape does not qualify as a crime of violence because it does not involve purposeful, violent, and aggressive conduct that is similar to the crimes of burglary, arson, extortion, or crimes involving explosives).[8] Each time Petitioner purposefully resisted law enforcement

---

[8] In *Clay*, the Fourth Circuit explained that a generic crime of walk-away escape "involves simply 'leav[ing] a facility without removing a physical restraint, without breaking a lock on a door, without climbing over a prison

9

officers' orders to stop fleeing, the risk of dangerous confrontation accumulated. Specifically, Petitioner's conduct affirmed to the law enforcement officers that Petitioner bore a strong aversion to returning to penal custody and that he would prefer to dispel the officers' attempt to effect final capture rather than yield to it. *Accord United States v. Hairston*, 71 F.3d 115, 118 (4th Cir. 1995) (stating that an escape "inherently presents the serious potential risk of physical injury to another, because the escapee intent on his goal of escaping, faces the decision of whether to dispel the interference or yield to it"). Thus, Petitioner's conduct increased the likelihood that the law enforcement officers would, in a legitimate and lawful manner, use force to capture Petitioner and to protect themselves. In essence, Petitioner's decision to resist penal custody purposefully created an extremely volatile and potentially lethal environment for him, the law enforcement officers, and the public. *See Sykes*, 131 S. Ct. at 2273 ("A criminal who takes flight [in a vehicle] and creates a risk of this dimension takes action similar in degree of danger to that involved in arson, which also entails intentional release of a destructive force dangerous to others.").

Because Petitioner's purposeful flight from law enforcement officers produced a significant risk of injury, Petitioner necessarily pled guilty to escape with force, which qualifies as a crime of violence under U.S.S.G. § 4B1.2(a). *See Clay*, 627 F.3d at 966 (reasoning that in order to consider a prior offense as a crime of violence, the charging documents, including the

---

wall or security fence or without otherwise breaking through any other form of security designed to keep them put.'" 627 F.3d at 969 (quoting *United States v. Lee*, 586 F.3d 859, 869 (11th Cir. 2009)). On the other hand, the Fourth Circuit explained that a traditional break-out escape involves conduct that presents a serious potential risk of physical injury to another. *Clay*, 627 F.3d at 929. Petitioner's decision to engage in a dangerous flight from law enforcement officers distinguishes his actions from a simple walk-away escape. Indeed, Petitioner's crime is most similar to a traditional break-out escape because it involved additional unlawful and violent conduct that presented a continuous and serious potential risk of physical injury. *Cf. United States v. Bailey*, 444 U.S. 394, 413 (1980) (reasoning that escape from federal custody is a continuing offense because it involves a continuing threat to society); *United States v. Lee*, 586 F.3d 859, 872 (11th Cir. 2009) (reasoning that an escape involves force when it is likely "to lead to escalated confrontations with law enforcement or to otherwise create a serious potential risk of physical injury to others").

transcript of colloquy between judge and defendant, "must *necessarily* show (plausibility or even likelihood is insufficient) that the defendant pleaded guilty to generic conduct that would constitute a crime of violence"). Petitioner could not have pled guilty to simple walk-away escape because the charging documents, including the court transcript, definitively show that his conduct necessarily caused law enforcement officers to use destructive force in order to apprehend him. Petitioner's conduct included engaging in a dangerous flight from law enforcement officers that required officers to construct a perimeter, request air support, and utilize K-9 units in order to subdue the Petitioner. Ct. Tr., Feb. 2, 2001 at 7-10. Petitioner's conduct definitely distinguishes his conviction from a non-violent, walk-away escape because he acted in a violence-provoking manner when he decided to disobey law enforcement officers' orders. *See United States v. Lee*, 586 F.3d 859, 874 (11th Cir. 2009) (reasoning that simple walk-away escape does not include violence-provoking conduct that could jeopardize guards or bystanders).

## II. Ineffective Assistance of Counsel Claim.

Because this Court finds that Petitioner's escape conviction qualifies as a predicate for his career offender status, Petitioner's ineffective assistance of counsel claim is meritless. In order to establish a claim for ineffective assistance of counsel, Petitioner must prove both elements set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 671 (1984). First, a petitioner must show that his counsel's performance was so deficient as to fall below an "objective standard of reasonableness." *Id.* at 688. In assessing whether counsel's performance was unconstitutionally deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Second, a petitioner must show that his counsel's performance was so prejudicial as to "deprive the

11

defendant of a fair trial." *Id.* at 687. In order to establish this level of prejudice, the petitioner must demonstrate that there is a "reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Satisfying either of the two parts of the test alone is insufficient; rather, the petitioner must meet both prongs of the *Strickland* test in order to be entitled to relief. *See id.* at 687. ("Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.").

In this case, Petitioner did not suffer prejudice, and as a result, he cannot prove the second prong of the *Strickland* claim. Even if Defense Counsel had challenged Petitioner's career offender status, this Court still would have imposed the same sentence because this Court finds that Petitioner's escape conviction qualifies him for career offender status. As a result, Defense Counsel's failure to challenge the career offender status did not impact Petitioner's ultimate sentence.

## CONCLUSION

Petitioner's claim of ineffective assistance fails due to lack of prejudice because this Court finds that Petitioner's escape conviction qualifies as a predicate for career offender status. For the reasons stated above, Petitioner's Motion to Vacate, Set Aside, or Correct Sentence (ECF No. 107) is DENIED.

A certificate of appealability shall not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2) (2000). A petitioner satisfies this standard by demonstrating that reasonable jurists would find that an assessment of the constitutional claims is debatable and that any dispositive procedural ruling dismissing such claims is likewise debatable. *Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Rose v. Lee*, 252 F.3d 676, 683-

84 (4th Cir. 2001). Because reasonable jurists would not find Petitioner's claims debatable, a certificate of appealability is DENIED.

A separate Order follows.

Dated: October 29, 2013

/s/

Richard D. Bennett
United States District Judge